## A. O. GAINES ET AL. v. NATIONAL EXCHANGE BANK, HOUSTON.

SUPREME COURT, AUSTIN TERM, 1882.

*Assignment of cause of action.*—The assignment of the cause of action upon which the judgment was rendered, would carry with it the right to the judgment.

*Parol trust—Evidence.*—The rule that it requires more than the testimony of one witness to engraft a parol trust upon a written title is alone applicable to such cases where either the trust was sought to be established by proving the declarations of a deceased trustee, or where the trustee was testifying to the trust in his own interest.

*Voidable deed.*—It is well settled that a deed made to hinder, delay or defraud creditors is not a nullity, but that such deed is voidable at the instance of the creditors of the grantor.

*Judgment lien—Homestead.*—A judgment lien on land will not be defeated by a subsequently acquired homestead right.

Appeal from the District Court of Falls county.—On the twentieth day of February, 1878, the appellee instituted its suit against the appellants and J. W. Whitsett, in which it is alleged:

That on the eighth day of September, 1877, W. J. Hutchins recovered a judgment in the District Court of Falls county, against A. O. Gaines, for $1095.50 in gold, with ten per cent interest from the date of the judgment, and costs, and forclosing a vendor's lien on 110 acres of land in Falls county; that this land was sold on ...............day of............... 1877, under this judgment, for $165, which was credited on the judgment; that on the nineteenth of December, 1877, Hutchins transferred this judgment to the plaintiff corpoi at on. February 18, 1878, execution was issued for the balance of the judgment, which was returned unsatisfied; that A. O. Gaines is insolvent; that on September 1, 1877, he being the owner of 600 acres of land in controversy, he, for the purpose of defrauding his creditors, conveyed on that day 300 acres to J. W. Whitsett and 300 to Lina Gaines, and prayed that these deeds be set aside.

By supplemental petition, the plaintiff alleged a conspiracy between the three defendants for the purpose of defrauding A. O. Gaines' creditors.

It was also alleged that on the nineteenth of December, 1877, Hutchins transferred to the plaintiff the note of January 1, 1874, made by A. O. Gaines to Hutchins for $800 gold, on which said judgment was recovered, without knowing that the judgment had been rendered.

Whitsett answered by general denial.

A. O. Gaines and Lina Gaines answered separately. They excepted to the plaintiff's pleadings and answered by general denial, and denied especially the plaintiff's ownership of the judgment. Lina Gaines denied that the conveyance to her was fraudulent, and averred that A. O. Gaines never was the owner of the three hundred acres conveyed to her; that her husband, D. Y. Gaines, since deceased, owned the six hundred acres and conveyed it to A. O. Gaines upon the express trust and condition that he should hold one-half of it in trust for her, and convey to her on her request; that A. O. Gaines always held one-half in trust for her, and his conveyance was in accordance with his duty as trustee.

A. O. Gaines pleaded the same facts, and claimed a homestead as to two hundred acres.

September 1, 1880, a verdict and judgment was rendered for the

plaintiff, and the defendants, A. O. and Lina Gaines appeal, assigning numerous errors. Only those deemed necessary to a proper disposition of this case will be considered, and will sufficiently appear in the opinion.

Opinion by Watts, J.—Appellants' first proposition is as follows:

"The court erred in the second sub-division, or section, of the charge, wherein the court instructs the jury, in substance, that the transfer of the note described in the written transfer from Hutchins to the plaintiff, in evidence, if made without the knowledge that the judgment in evidence had been rendered on the note, conferred upon the plaintiff all the right that Hutchins had to the judgment, because the legal effect of the transfer is not to vest in said plaintiffs right or title to said judgment, but only right and title to said note; and if said plaintiff has right or title, by virtue of said transfer, to said judgment, it is an equity that can be established only by proof of an intention that would confer such right, and the payment of a consideration; and because said charge is a comment on the weight of the evidence."

The assignment of the cause of action upon which the judgment was rendered would carry with it the right to the judgment, on the general principle that the assignment of a particular claim passes to the assignee all the remedies and liabilities which the assignor had to secure and recover it, though they are not sufficiently mentioned in the assignment. (Freeman on Judgments, sec. 422; Mahaffy v. Share, 2 Penn., 361.)

The record sufficiently establishes the fact that neither the assignor nor the assignee knew, at the time of the assignment, that any judgment had been rendered upon the note, and that the intention of the parties was that all of the interest of the assignor in the debt should pass by the assignment and vest in the assignee, and, upon this view of the case, would show such an interest or right in the judgment as would entitle him to maintain this suit. (Park v. Glover, 23 Texas, 473.)

The objection that the charge is a comment on the weight of the evidence is not supported by the record. Taking and construing the entire charge upon that issue, we find no objection to it.

The second proposition of the appellants is as follows:

"The court erred in section nine of the charge, wherein the court instructed the jury, in substance, that the trust therein mentioned must be shown by clear and satisfactory evidence, either by the testimony of two credible witnesses, or one such witness and strong corroborating circumstances; because said proposition therein con-

tained is error in law, in that said rule of evidence prevails only when the contest is between the alleged trustee, and *cestui que* trust and is not applicable when the issue is fraud as to third parties in no way connected with the trust."

All parties are asserting rights by and through the deed from D. Y. Gaines to A. O. Gaines, the appellee seeking to subject the land to his judgment against A. O. Gaines, and the appellants claiming that, as to the three hundred acres conveyed to Lina by A. O. Gaines, the latter never had any title, but held the same in trust for her, and in this way attempting to engraft upon the deed, absolute upon its face, a parol trust, to defeat the appellee.

The deed from D. Y. to A. O. Gaines was admissable and competent evidence upon this issue; and the effect of the deed, as evidence, was to show that the title to the land vested in A. O. Gaines, without conditions.

The title to land, generally, is required to be evidenced by written instruments, and the permanent enjoyment of the owner depends materially upon the efficacy that is to be attributed to these writings; and, hence, public policy requires that to engraft a parol trust upon, and thus change the legal effect of the written title, that such trust must be established with clearness and certainty.

The court, in the case of Moreland v. Barnhart, 44 Texas, 283, said: "The trust must be shown with clearness and certainty; and in some cases it has been held that it must be shown by the testimony of more than one witness, unless his testimony be confirmed by corroborating circumstances." However, an examination of the authorities referred to shows that the cases where it was held that it required more than the testimony of one witness to establish the trust, was either where the trust was sought to be established by proving the declarations of a deceased trustee, or where the trustee was testifying to the trust in his own interest. In other than this class of cases, we are of the opinion that the rule as to the number of witnesses does not apply. All that is required is that the trust be established with clearness and certainty.

We conclude that the charge of the court in this particular was erroneous.

The next proposition that we think requires consideration is that predicated on the charge of the court, which is, in effect, as follows: "But, if you believe the purpose of said deed was to vest the land in A. O. Gaines, or that it was not in trust, as to the three hundred acres, for Lina Gaines, but for himself, D. Y. Gaines, with the in-

tent to hinder, delay or defraud his creditors, you will find for the plaintiff, against Lina Gaines, and that the three hundred acres claimed by her is subject to the plaintiff's debt."

The appellants insist that if, as a matter of fact, the deed from D. Y. to A. O. Gaines, as to the three hundred acres conveyed by the latter to Lina Gaines, was fraudulent as to the creditors of D. Y. Gaines, that nevertheless the deed would not be void, but only voidable at the instance of the creditors of the grantor; and that under such circumstances, if A. O. Gaines, who never, in fact, owned the land, but held the legal title as a naked trustee, conveyed to Lina Gaines, that this would not authorize the appellee to have the deed adjudged void, and to subject the three hundred acres of land to the payment of the judgment against A. O. Gaines.

It is well settled that a deed made to hinder, delay and defraud creditors is not a nullity, but that such a deed is voidable at the instance of the creditors of the grantor. (Fowler v. Stoneum, 11 Texas, 502.)

The statute of frauds declares such deeds void only as to parties whose rights are prejudiced by the same; and, in the case before us, if the conveyance was fraudulent as to the creditors of D. Y. Gaines, nevertheless it was valid and binding as between D. Y. Gaines and A. O. Gaines; and if, as claimed by the appellants, A. O. Gaines did not own, but merely held the legal title to the three hundred acres in trust for Mrs. Lina Gaines, then, while she could not have enforced the trust and compelled A. O. Gaines to convey to her, still, as the trustee had conveyed to the beneficiary before any lien attached to the land while in his name, it would in no way authorize appellee to have such deed declared fraudulent and subject the land to the payment of his judgment.

We are of the opinion that the court erred in giving said charge.

The only remaining question to consider, although presented by several propositions, is, in fact, but one question, and that is, will a judgment lien prevent a married man, the head of a family, from acquiring a homestead, who has none, and only owns the one tract of land?

In the consideration of this question, it should be remembered that the Hutchins judgment foreclosed the vendor's lien upon the one hundred and ten acres, the only other tract the appellant A. O. Gaines owned at the time of the rendition of that judgment, or since that time. He had not then designated or fixed his home-

6B

stead upon either tract of land owned by him, that is, the one hun-
and ten acres for which the note was given, nor the tract of land
here in controversy.   After this suit was instituted to subject the
land to the appellee's judgment, Whitsett reconveyed to appellant
A. O. Gaines, who was then, and had been for a long time prior to
the rendition of the Hutchins judgment, a married man and the
head of a family.   Gaines then moved upon the land with his fam-
ily, and improved the same, and has continuously occupied it as a
homestead since that time.

An examination of the subject, as treated by Mr. Thompson in
his work on Homestead and Exemptions, will show that there has
not been a uniformity of decision upon the question.

In Minnesota and some of the other States, it has been said by
their respective Supreme Courts that the owner of land cannot, by
making it his homestead, defeat a judgment lien previously at-
tached to the land.   While the Supreme Court of Nevada held the
contrary, in Iowa it has been decided both ways.   The later decision,
however, was to the effect that a previous judgment lien did not
preclude the owner from acquiring a homestead upon the land.
The Supreme Court of Mississippi, in a long line of well considered
cases, and in able decisions, holds the same doctrine.   It would be
an unprofitable task for us to search the reports of the various
States to determine upon which side of this question the weight of
authority rests, as we think the decisions of our own Supreme Court
conclusive of the question.

In 1857, the case of Stone v. Darnell, 20 Texas, 11, was decided
by as able a court as any in the United States, composed as it was,
of Chief Justice Hemphill, Justices Wheeler and Roberts.   The
case was ably argued and fully considered by the court, and it was
there held that even after execution levied, the owner could move
upon the land with his family before the sale, and secure a home-
stead as against the execution lien.   That case has been cited in
many subsequent decisions, and approved in McManus v. Campbell,
37 Texas, 267.

The construction given to our constitutional provisions with re-
spect to the homestead right by the court in the case of Stone v.
Darnell, was the recognized and authoritative exposition of that
provision, and the correctness of which was not questioned by the
court until 1879, in the decision of Baird v. Trice, 51 Texas, 555.
During that eventful period of twenty-two years, the people of the

State had adopted three several constitutions, one in 1866, one in 1870, the other in 1876. An examination of each of these constitutions, will, we think, show that there was no intention to change the language of the homestead provision, so as to give it a different meaning from that given it in Stone v. Darnell.

It is a well established rule of construction that when a constitutional provision or section of a statute that has been construed by the Supreme Court is readopted or re-enacted after such construction, that it will be considered as adopted or enacted with the construction and meaning previously given to it by the court. The provision in the Constitution of 1866, is in the same terms as that of 1845, except that after the words "shall not be subject to forced sale for debts " is added, "except they be for the purchase thereof, for the taxes thereon, or for labor and materials expended thereon." The provision in that of 1870 is in the same terms as that of 1866.

The homestead provision in the Constitution of 1876, is more liberal in protecting the homestead from forced sale than any of the previous constitutions, and we search in vain for any expressions in these later constitutions that would indicate any desire upon the part of the people of Texas to change the rule established in the case of Stone v. Darnell.

At the time of the decision of that case, the act of 1840 was in force (Paschal's Digest, art. 3954), giving judgment leins and is, in effect, the same as that in force at the rendition of the judgment of Hutchins v. Gaines.

In the case of Baird v. Trice, 51 Texas, 561, the decision of Stone v. Darnell is limited, as we understand it, to general liens, or, in other words, it is there held, that if a specific lien has attached to the land before its occupancy by the owner as a homestead, that such specific lien would take precedence of the after-acquired homestead, and to this extent the case of Stone v. Darnell is overruled. The case of Baird v. Trice does not affect the question now under consideration. And upon the authority of Stone v. Darnell and McManus v. Campbell, supra, and 38 Miss., 198; 50 Miss., 363; 52 Miss., 791; 3 Nevada, 182; 35 Iowa, 170, and the observations hereinbefore made by us, we are of the opinion that the charge of the court upon this branch of the case was erroneous. I wish to remark for myself that I do not concur in the case of Baird v. Trice. The authorities cited to sustain that decision are, in the main, from States where their homestead exemption is based upon statutory

enactments, and not inflexible constitutional provisions as with us —based upon a policy that permeates every portion of our judicial system. Where a party has created a voluntary lien upon his land, he cannot afterward acquire a homestead so as to defeat such lien. Nor could he dispose of a homestead and acquire another on land upon which an involuntary lien had attached, for this would be a fraud upon the homestead right that would not be permitted by the courts. But, as a general rule, I believe to be correct the doctrine announced in Stone v. Darrell, that if the land be the homestead at the time of the sale, then no title will pass as against the owner, for by the terms of the Constitution it is protected from forced sale. It seems to me that the true criterion is not as to whether the lien is general or specific, but as to whether it is a voluntary or an involuntary lien. No involuntary lien created by operation of law, or without the consent of the owner, ought to preclude him from securing a homestead at any time before the sale is made. Any other construction must result in protecting the man who is able to protect himself, by paying the debts constituting the liens, or by being able to get upon the land before the lien accrued. But the unfortunate man who, perhaps for the want of means, or on account of ill-health or other misfortune, has been delayed in moving upon and improving his land until his creditor has thrown around it the fatal embraces of a writ of attachment, or hedged it about with judgment lien, must be defeated in the exercise of a constitutional right in securing a home for himself and family.

Any other construction of the Constitution must inevitably result in what was so truly said by Ch. J. Hemphill—"No debtor could ever procure a homestead until he discharged all previous judgments, for they are liens upon his lands, or until he had paid all judgments rendered since his purchase of land, but before he had or was able to erect a dwelling-house on that portion selected by him for his homestead. The very object of the provision was to secure an asylum for the family, whether the head of the family owed or did not owe debts, or they were or were not in judgments." It is not within the power of the courts to construe away a constitutional provision because it may appear incorrect or unjust. (Cooley's Const. Limitations, secs. 54, 55, 56, 57 and 73.)

The judgment ought to be reversed and the cause remanded.

The report of the Commissioners of Appeals examined and their report adopted, except in so far as it holds the homestead right of

A. O. Gaines superior to the judgment lien on the land claimed by him a homestead, which part of said report is not adopted, and the principles relating thereto are announced in the case of Gage et al. v. Neblett, decided at the present term (Texas Law Reporter, vol. 1, p. 436), and also in the cases of Railroad Company v. Winter, 44 Texas, 597, and Baird v. Trice, 51 Texas, 555; and this judgment reversed and cause remanded.—GOULD, C. J.